# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VINCENT A. PENDLETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-348-M |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED.**

### I.     Procedural Background

Plaintiff's application for benefits was denied initially and on reconsideration. Following a hearing, where Plaintiff appeared *pro se*, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 45-54). During the appeals process, Plaintiff secured the services of an attorney and submitted additional medical records to the Appeals Council. (TR. 20-40). The Appeals Council denied Plaintiff's request for review,

noting that the additional medical records submitted were relevant only to time periods after the ALJ's decision. (TR. 4, 20-40).[1] Thus the ALJ's decision became the final decision of the Commissioner. (TR. 3-6). This judicial appeal followed.

## II.   The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since July 15, 2008, the alleged disability onset date. (TR. 47). At step two, the ALJ determined Plaintiff has the following severe impairments: history of congestive heart failure, cardiomyopathy, hypertension, migratory joint pain, pain and swelling of the knees and feet, right knee effusion, obesity, and alcohol abuse. (TR. 47). At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 48).

At step four, the ALJ found Plaintiff could not perform any of his past relevant work. (TR. 53). The ALJ further found Plaintiff has the residual functional capacity (RFC) to perform a limited range of sedentary work; lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for 2 hours in an 8 hour workday; sit for about 6 hours in an 8 hour workday; and can only occasionally use foot controls. (TR. 48-49). Additionally, Plaintiff can never climb ladders, ropes or scaffolds,

---

[1] The Appeals Council also noted Plaintiff had filed a subsequent disability application on April 25, 2013 and had been found to be disabled starting from that date. (TR. 4).

and he must avoid exposure to hazardous machinery and extremes of hot and cold and humidity; but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (TR. 49). At step five, the ALJ found there are jobs that exist in significant numbers in the national economy Plaintiff can perform. (TR. 53). Accordingly, Plaintiff was found to be not disabled from the alleged onset date through the date of the ALJ's decision. (TR. 53-54).

### III.    Issues Presented

Plaintiff raises two primary issues on appeal. First, Plaintiff contends the ALJ failed to fully and adequately develop the record. (ECF No. 20:7-10). Second, Plaintiff argues the ALJ erred in finding he does not meet Listing 4.02 for Chronic Heart Failure. (ECF No. 20:10-12).

### IV.    Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V.    Analysis

#### A. ALJ's Duty to Develop the Record

Plaintiff contends the ALJ failed to fully develop the record in this case based primarily upon his contention that the ALJ should have sought to obtain one additional

3

medical record. During his administrative hearing, Plaintiff stated that he had seen a family medicine physician four to five months prior to the hearing, in June 2011. (TR. 76-77, 79). He also indicated that he did not see a physician very often. (TR. 79). Plaintiff now argues the ALJ erred by not seeking to obtain the record from this June 2011 appointment with the treating physician. (ECF No. 20:7-8).

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits...." *Sims v. Apfel*, 530 U.S. 103, 110 (2000). "Although a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Dept. of Health and Humans Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993). "The standard is one of reasonable good judgment." *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997). While "[t]he ALJ's duty to develop the record is heightened when a claimant is unrepresented [by counsel], *see Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992), "it is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins*, 113 F.3d at 1164.

"Generally, '[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.'" *Rains v. Apfel*, No. 98-7178, 1999 WL 798086, at *2 (10th Cir. Oct. 7, 1999) (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)). "The degree of effort required by the ALJ to develop the record, however, varies from case to case." *Id.*

4

(citing, *cf., Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (noting that whether ALJ has adequately developed the record must be determined on case by case basis); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983) (same)).

By the time Plaintiff's case reached the appellate stage, he had secured the services of an attorney. (TR. 20). The attorney submitted new evidence to the Appeals Council, but did not include the record from this June 2011 appointment with Plaintiff's family medicine physician. (TR. 20-40). This could lead to the conclusion that the record was unobtainable or that it was not crucial to Plaintiff's case. *See Rains*, 1999 WL 798086, at *2 (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

More significantly, however, 42 U.S.C. § 405(g) permits a district court to remand a case for consideration of new evidence where the plaintiff shows that new evidence is material and there is good cause for failure to incorporate such evidence in the administrative record. The mere fact that Plaintiff had an additional medical appointment, without more, is not sufficient to meet this standard. *See also Hawkins*, 113 F.3d at 1169 (noting that when the missing evidence was in existence at the time of the administrative hearing, it may be appropriate to "require [] the claimant to provide prejudice by establishing that the missing evidence would have been important in resolving the claim before finding reversible error") (citing *Shannon*, 54 F.3d at 488)).

Plaintiff never describes what actually took place at this appointment with his family medicine physician. (TR. 76-77, 79). Neither at the administrative hearing, nor in

5

his appeal, nor before this court has Plaintiff offered any explanation as to how this missing record would be relevant to the disability determination. Instead, Plaintiff borders on arguing for a *per se* rule that if an ALJ does not obtain all records from any appointment occurring during the relevant time period, then the decision must be remanded for further consideration. This is simply not the law.

Plaintiff does attempt to tie this argument to the medical expert's ("ME") testimony that he meets the first part of Listing 4.02, but not the second. However, even in this assertion, Plaintiff wholly fails to explain how the record from this appointment could be relevant to consideration of Listing 4.02; instead, Plaintiff merely indicates that it could be relevant. Under the circumstances, the undersigned concludes Plaintiff has not shown the ALJ committed reversible error by not obtaining the record from Plaintiff's June 2011 appointment.

Plaintiff next argues the ALJ erred by not eliciting more information from Plaintiff during his administrative hearing regarding his daily activities and how his medical conditions affected the same. As noted by Plaintiff, the applicable standard in determining whether an ALJ has conducted a sufficient inquiry of the claimant is: "'whether [sufficient questions were asked] to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities.'" *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (quoting *Musgrave*, 966 F.2d at 1374). Similar to Plaintiff's argument regarding his medical

6

records, he does not explain what information the ALJ might have elicited had he asked additional questions at the administrative hearing. Further, a review of the administrative hearing transcript reveals the ALJ's inquiries were sufficient.

    At the hearing, the ALJ and the ME asked Plaintiff what medications he was prescribed and/or was currently taking. (TR. 77-78). With regard to daily activities, the ALJ specifically asked Plaintiff how he spends his days and Plaintiff answered that he spends them watching TV. (TR. 93). He also asked whether Plaintiff did his own laundry and whether he does his own cooking. (TR. 94). The ALJ inquired as to whether Plaintiff paid his own bills and whether he went out for activities, such as visiting family, attending cookouts, or family reunions. (TR. 95). When Plaintiff indicated that he attends family reunions, the ALJ went further and specifically asked him what he was able do at them and whether he was able to "be exactly as the other people are." (TR. 95-96). The ALJ also provided examples to Plaintiff, such as whether he participated if family members played volleyball or softball. (TR. 95-96). When Plaintiff's answers were not very helpful (including that he does not play volleyball and that his family does not play softball), the ALJ asked Plaintiff about any other possible activities in which he participated. (TR. 96). When Plaintiff responded that he goes to church, the ALJ followed up with asking how he got there and "are you able to participate the way other worshippers participate?" (TR. 96-99). Plaintiff answered that he was able to stand during hymns, unless they were long and then he would have to sit down before

the hymn was completed. (TR. 99). The ALJ also inquired further regarding Plaintiff's social life and learned that Plaintiff attends his children's school activities. (TR. 99).

"The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins*, 113 F.3d at 1168 (citing *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)). The ALJ's duty to develop the record through both medical records and inquiry "is not a panacea for claimants [that] requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning." *Glass*, 43 F.3d at 1396. Reviewing the ALJ's questioning in conjunction with the documentary record leads the undersigned to conclude the duty of inquiry was satisfied in this matter.

### B. Listing 4.02

Plaintiff also contends the ALJ erred in finding that he did not meet or equal Listing 4.02 for Congestive Heart Failure. The undersigned disagrees. A plaintiff is *per se* disabled if he has an impairment or combination of impairments that meet or medically equal the requirements of a Listing. *See* 20 C.F.R. § 404.1525 ("The Listing of Impairments (the listings) is in appendix 1 of this subpart. It describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."); 20 C.F.R. pt. 404, subpt. P, app. 1. Listing 4.02 provides:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

8

A. Medically documented presence of one of the following:

1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

B. Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during

> exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>
> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02. The ALJ found Plaintiff meets subsection A of Listing 4.02, but does not meet subsection B. It is clear from a review of the record, including the ALJ's decision and his discussion of the testimony of the ME, that substantial evidence exists to support the ALJ's conclusion.

The ALJ explains that the ME noted Plaintiff had been treated for hypertension and was hospitalized for congestive heart disease in 2007. (TR. 48). In his decision, the ALJ also noted the ME's testimony that an echocardiogram had shown Plaintiff had an ejection fraction of 30% in 2008 and 34% in 2010. (TR. 48, 323). Based on this, Plaintiff meets the requirements of Listing 4.02(A). (TR. 88). However, there is no evidence in the record to support a finding Plaintiff meets Listing 4.02(B).

With regard to 4.02(B)(1), the ALJ included information in his decision regarding Plaintiff's daily activities, *see* TR. 49, and this information supports the conclusion that Plaintiff's impairment does not "very seriously limit his ability to independently initiate, sustain, or complete activities of daily living …." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02(B)(1). Further, while the ALJ acknowledged that Plaintiff suffers from congestive heart failure, *see* TR. 47, 50, his records do not show, and Plaintiff does not direct the Court to any evidence indicating, three acute episodes of congestive heart failure in a 12-month period. Thus, there is no evidence to support a finding that he meets §

4.02(B)(2). Additionally, Plaintiff's medical records do not reflect the requirements set forth in § 4.02(B)(3). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02(B)(3) (related to an inability to perform an exercise tolerance test at a workload equivalent to 5 METs or less due to various possible factors).

In his Opening Brief, Plaintiff does not specify which of the three parts of subsection (B) he meets but instead, sets forth a summary of his medical records relevant to his heart conditions. (ECF No. 20:11-12). There is no dispute that Plaintiff suffers from various heart related impairments. Indeed, the ALJ specifically found Plaintiff suffered from a history of congestive heart failure, cardiomyopathy and hypertension, as well as other impairments. (TR. 47). However, claimants can suffer from a host of severe impairments and not meet a Listing for a related condition. The ALJ found Plaintiff did not meet the Listing for Chronic Heart Failure and there is substantial evidence in the record to support his finding. Accordingly, the undersigned finds the decision of the Commissioner should be affirmed.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED.**

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **August 7, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir.2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on July 24, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE